## THEOS & SONS, INC. *vs.* MACK TRUCKS, INC.

Middlesex. February 8, 2000. - June 20, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Civil,* Summary judgment. *Warranty. Uniform Commercial Code,* Sale of goods, Warranty. *Sale,* Warranty. *Agency,* Scope of authority or employment, What constitutes.

Where in a commercial transaction a truck manufacturer disclaimed, in compliance with the requirements of G. L. c. 106, § 2-316, the implied warranty of merchantability with respect to the original sale of a truck, the disclaimer was valid against a subsequent purchaser who purchased the truck without knowledge of the disclaimer. [739-741]
The plaintiff in a civil action did not demonstrate that an authorized truck parts and service dealer acted on behalf of and for the benefit of, and subject to the control of, a truck manufacturer such as would render the manufacturer liable under an agency or apparent authority theory for the alleged negligence of the service dealer in repairing a certain truck not under warranty. [742-747]

CIVIL ACTION commenced in the Superior Court Department on August 4, 1995.

On transfer to the Cambridge Division of the District Court Department, the case was heard by *George R. Sprague,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Russell R. Weddell* for the plaintiff.

*William J. Dailey, III,* for the defendant.

*Richard J. O'Neil, Jr.,* for Vigor Diesel Injection, Inc., was present but did not argue.

MARSHALL, C.J. This action arises from the sale, resale, and alleged negligent repair of a Mack truck. It concerns the effect of a manufacturer's disclaimer of an implied warranty of merchantability on a subsequent purchaser who was unaware of the disclaimer. It also concerns a manufacturer's liability under agency principles for the actions of the manufacturer's

authorized parts and service dealer, when that dealer is engaged in nonwarranty repair work.

The plaintiff, Theos & Sons, Inc. (Theos), brought an action for damages to its Mack truck engine, against Mack Trucks, Inc. (Mack), a manufacturer of trucks, its distributor, Manchester Mack Sales, Inc. (Manchester Mack), and Vigor Diesel Injection, Inc. (Vigor), an authorized Mack parts and service dealer. A judge in the District Court granted summary judgment for Mack, without detailing his reasons, and entered final judgment as to Mack pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). Theos appealed to the Appellate Division of the District Court, which affirmed the judgment. We transferred the case from the Appeals Court on our own motion. Theos argues two theories of liability. First, Theos argues that Mack breached an implied warranty of merchantability and that Mack's original disclaimer of this implied warranty is not effective against Theos, a subsequent purchaser unaware of the disclaimer.[1] Second, Theos argues under agency theory that Mack is vicariously liable for the dealer's negligent repair of, or failure to repair, the engine and the dealer's breach of express warranties and violations of G. L. c. 93A.

We conclude that Mack's disclaimer of the implied warranty of merchantability given to the original truck purchaser may be enforced against a subsequent purchaser without notice, such as Theos. Because Theos presented no genuine issue of Mack's liability for its dealer's conduct under an agency or any other theory, we affirm the judgment.

1. *Facts.* The standard of review for a grant of summary judgment is whether, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

---

[1] Theos claims that the total destruction of its Mack truck engine and resulting damages were caused by Mack's breach of implied warranties in the design, development, testing, manufacturing, marketing, advertising, and distribution of the engine in the truck, specifically its pistons and liners. The engine apparently failed at the Vigor garage. Theos makes no claim of personal injuries resulting from the engine failure or of damages to other property; damages are apparently based on the costs for repair or replacement of the ruined engine. Cf. *Marcil* v. *John Deere Indus. Equip. Co.,* 9 Mass. App. Ct. 625, 630-631 & n.3 (1980) (distinguishing economic loss due to costs of repair and replacement of defective product from claims of personal injury or damage to other property).

See, e.g., *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). We review the facts under that standard.

On August 31, 1989, J.E. Larkin, Inc. (Larkin), purchased from Mack and took delivery of a Mack truck.[2] The terms of sale included a "Mack Mid-Liner Standard Warranty" (warranty) that covered the truck's engine for twenty-four months after delivery and a disclaimer of all other warranties, express or implied, including the implied warranty of merchantability.[3] The twenty-four month engine warranty expired on August 31, 1991. On December 17, 1992, Theos bought the truck from Larkin.[4] Theos was neither apprised of, nor provided with, any written copy of the warranty, nor informed of any such disclaimers.

In December, 1993, a Theos driver heard noises coming from the truck's engine compartment and towed the truck to Vigor for repairs, where it was determined that the engine block was damaged. After Vigor repaired the truck, the Theos driver drove it for a short distance before the same noise was heard again. The truck was brought back to Vigor and, while in Vigor's possession, the truck's engine failed.[5]

The relationship between the distributor, Manchester Mack,

---

[2]The sale was a commercial transaction between two corporations and did not involve consumer goods. See G. L. c. 106, § 2-316A (2) (exclusion or modification of implied warranty of merchantability unenforceable for consumer goods); *id.* §§ 2-103, 9-109 (defining consumer goods); *Jacobs* v. *Yamaha Motor Corp., U.S.A.*, 420 Mass. 323, 327-328 (1995) (for purposes of § 2-316A, consumer goods are those bought for personal, family, or household uses).

[3]The disclaimer was prominently displayed in capital letters on the face of the Mack Mid-Liner Standard Warranty:

> "THIS WARRANTY IS MADE EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATION OR LIABILITY ON THE PART OF THE MANUFACTURER INCLUDING WITHOUT LIMITATION OF THE FOREGOING, CONSEQUENTIAL AND INCIDENTAL DAMAGES."

[4]Theos does not claim that Larkin was a Mack truck dealer.

[5]According to Theos, Vigor improperly assessed the problem and left the engine running for an unreasonable length of time, causing one of the pistons to break apart, damaging the engine irreparably. Mack had issued a service bulletin and cylinder kit to all authorized parts and service dealers, informing them that the pistons in this kind of truck were prone to failure. The bulletin

and authorized parts and service dealer, Vigor, is outlined in an agreement titled, "Authorized Parts and Service Dealer Agreement" (agreement). The agreement states that it "is not valid unless and until . . . approved by an officer of [Mack]." The agreement was executed by officers of Manchester Mack and Vigor, and "approved" by two Mack executives. We describe in greater detail in Part 2, *infra*, additional terms that inform our discussion.

The agreement provides that Vigor will render warranty service on Mack vehicles "in accordance with [Mack's] applicable standard warranty policy," and only on prior approval for such service from Manchester Mack. Warranty service is to be undertaken using only genuine Mack or Mack-approved parts acquired from Manchester Mack.

*2. Breach of implied warranty claim.* We consider first Theos's contention that Mack is liable for the engine repair because Mack breached an implied warranty of merchantability. In the face of Mack's written disclaimer of the implied warranty of merchantability, Theos argues that the contract between Mack and the original purchaser, Larkin, does not bind it, a subsequent purchaser. Theos argues further that, because the implied warranty of merchantability is statutory, and because it is not unforeseeable that a truck may be resold by the original purchaser, Mack should be required as a matter of law to put subsequent purchasers on notice of the disclaimer of such warranty.

Pursuant to G. L. c. 106, § 2-314 (1),[6] a warranty of merchantability is implied in the sale of goods by a merchant unless properly disclaimed. The exclusion of implied warranties is governed by G. L. c. 106, § 2-316 (2), which provides in relevant part: "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous." The Appellate Division correctly determined that in this case the implied warranty was properly disclaimed by Mack, as to Larkin, because it was conspicuous and specifically referred to

---

contained instructions for any repairs; while performing repairs on Theos's truck Vigor did not follow these instructions.

[6]General Laws c. 106, § 2-314 (1), provides: "Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . ."

the implied warranty of merchantability.[7] The Appellate Division also correctly determined that the writing of the disclaimer complied with the requirements of G. L. c. 106, § 2-316, and thus effectively disclaimed all implied warranties. The question is, therefore, whether the disclaimer of the implied warranty of merchantability is enforceable against Theos, a subsequent purchaser.

General Laws c. 106, § 2-318, extends all warranties, express or implied, to third parties who may reasonably be expected to use the warranted product.[8] Section 2-318 does not provide that subsequent (third-party) purchasers are bound by disclaimers of warranties. A comment to G. L. c. 106, § 2-318, however, states that "where the warranty is properly excluded then [third parties] are bound by the exclusion." Massachusetts Code Comment, 13 M.G.L.A. 247-248 (West 1999). See 3A R.A. Anderson, Uniform Commercial Code § 2-316:168 (3d ed. 1995) ("When the express warrantor specifies that a subpurchaser of the goods may apply for a transfer of the express warranty made to the original purchaser, the subpurchaser is subject to any limitation or exclusion contained in the express warranty even though the subpurchaser may not have ever received a copy of it").

While we have not directly addressed this issue, other jurisdictions have reasoned that a subsequent purchaser should be subject to disclaimers or limitations on warranties made to the original purchaser, and should not acquire greater rights than those held by the original purchaser. See *Transport Corp. of Am.* v. *International Business Machs., Inc.*, 30 F.3d 953, 959 (8th Cir. 1994) (interpreting U.C.C. §§ 2-318 and 2-316 as

---

[7]A term or clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals . . . is conspicuous. . . . Whether a term or clause is 'conspicuous' or not is for decision by the court." G. L. c. 106, § 1-201 (10). See *Boston Helicopter Charter, Inc.* v. *Agusta Aviation Corp.*, 767 F. Supp. 363, 376 (D. Mass. 1991) (applying Massachusetts law); *Logan Equip. Corp.* v. *Simon Aerials, Inc.*, 736 F. Supp. 1188, 1197 (D. Mass. 1990) (same). See also *Hunt* v. *Perkins Mach. Co.*, 352 Mass. 535, 540-541 (1967).

[8]General Laws c. 106, § 2-318, provides: "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. . . ."

adopted in Minnesota) (disclaimers of implied warranties are extended to subsequent purchasers); *Boston Helicopter Charter, Inc.* v. *Agusta Aviation Corp.*, 767 F. Supp. 363, 376 (D. Mass. 1991) (subsequent purchaser, as an assignee, "steps into the shoes of his assignor" and is subject to any limitations or exclusions contained in the express warranty even though he did not receive a copy of it); *Lecates* v. *Hertrich Pontiac Buick Co.*, 515 A.2d 163, 165-166 (Del. Super. Ct. 1986) (modifications or exclusions of warranty rights are equally operative against subsequent purchasers who claim to be beneficiaries of such warranties); *General Motors Corp.* v. *Halco Instruments, Inc.*, 124 Ga. App. 630, 634-635 (1971) (same). We agree with the reasoning of those courts that Theos could not possess greater warranty rights as to Mack than the original purchaser, Larkin, and is subject to the same disclaimers or other limitations on an implied warranty of merchantability.[9] The subsequent purchaser bears the burden of ascertaining the existence of any limitations on the implied warranties. As Theos is subject to the disclaimer of implied warranty of merchantability that Mack made to Larkin, its warranty claim fails.[10]

---

[9]Theos argues that the reasoning we applied in *Ferragamo* v. *Massachusetts Bay Transp. Auth.*, 395 Mass. 581 (1985), a personal injury case holding that a disclaimer of warranty in a sale contract did not preclude the estate of the purchaser's employee from bringing a wrongful death action against the seller, should apply here. In *Ferragamo*, however, the warranty claims were based in tort, not contract, and we said that "a disclaimer is irrelevant in an action which, although framed as one for breach of warranty, is based on strict tort liability." *Id.* at 590. The reasoning of *Ferragamo* is not applicable in an implied warranty contract claim, as here. "When a product injures only itself, the reasons for imposing a tort duty are weak and those leaving the party to its contractual remedies are strong." *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 109 (1989), quoting *East River S.S. Corp.* v. *Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986). See note 1, *supra*.

The "middleman" cases cited by the plaintiff, which hold that "a manufacturer may not disclaim the implied warranty of merchantability to an ultimate consumer by merely including a disclaimer in a contract with a middleman or buyer who holds for resale only," do not apply here, where there is no evidence that Larkin was such a middleman. *Groppel Co.* v. *United States Gypsum Co.*, 616 S.W.2d 49, 60-61 (Mo. Ct. App. 1981). See *Patty Precision Prods. Co.* v. *Brown & Sharpe Mfg. Co.*, 846 F.2d 1247, 1252-1254 (10th Cir. 1988). These cases deal with middlemen who purchase products for resale to third parties and thus are not the ultimate users of products whose warranty is disclaimed.

[10]On appeal, Theos does not press a claim of express warranty against

3. *Liability of principal for agent's actions.* Invoking principles of agency law, Theos asserts that Mack is liable for the actions of Vigor because Vigor, as an authorized parts and service dealer, had actual, or at least apparent, authority to work on the truck engine on behalf of Mack. Mack responds that Vigor is an independent contractor for whose malfeasance Mack is not liable. Although the question of agency is usually an issue for the fact finder, the Appellate Division determined that Theos failed to advance specific facts sufficient to establish the existence of a genuine issue of material fact as to Vigor's actual or apparent authority to act on behalf of Mack. We agree.

An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control. See *Kirkpatrick* v. *Boston Mut. Life Ins. Co.,* 393 Mass. 640, 645 (1985), citing Restatement (Second) of Agency § 1 (1958); Restatement (Second) of Agency, *supra* at §§ 14, 15 comments a, b. See also *Patterson* v. *Barnes,* 317 Mass. 721, 723 (1945) (fundamental element of agency relationship is that agent act on behalf and for benefit of principal). The agreement, on the one hand, specifies that Vigor "is an independent contractor." The agreement further states that Mack is not a party to the covenants between Manchester Mack and Vigor, that it "shall not in any respect make [Vigor] the agent of [Manchester Mack] or of [Mack] to transact any business . . . for either of them in any form, nor in the name nor upon the behalf of either of them to make any promises or representations." On the other hand, the agreement is quite specific in its requirements with respect to warranty work. It also appears to give Mack some control over certain aspects of Vigor's activities.[11] Based on the undisputed evidence, we shall presume, without deciding, that a

---

Mack. In any event, such a claim is barred because the two-year express warranty on the engine expired more than two years before the engine's failure.

Theos also asserts that Mack engaged in unfair or deceptive acts or practices in violation of G. L. c. 93A for failing to perform or fulfil promises or obligations arising under a warranty. Mack argues that this claim was not preserved on appeal. We need not determine whether Theos waived this claim: because the warranty claim is without merit, the derivative c. 93A claim also fails.

[11]The agreement requires, for example, that Vigor (1) maintain suitable facilities with adequate and efficient service personnel and equipment; (2) render prompt and efficient service in accordance with Mack's policies and standards; (3) maintain a stock of genuine Mack parts; (4) utilize only parts manufactured or recommended by Mack in repairing or otherwise servicing

principal-agent relationship existed between Mack and Vigor, at least for purposes of doing Mack *warranty* work.[12]

Even where an agent-principal relationship exists, however, the principal has liability for the agent's acts toward third parties only if the agent was acting with the actual or apparent authority of the principal in that transaction. See Restatement (Second) of Agency §§ 7, 8 (1958). Mack would be liable for nonwarranty work performed on Theos's truck only if Vigor had actual or apparent authority to do such repair work on behalf of Mack. Actual authority, either express or implied,[13] is

Mack vehicles, except with written consent of Mack; (5) provide a conspicuous written disclosure in specified language to a customer when using a part that is not "Mack-approved" in servicing a Mack vehicle; (6) maintain certain tools specified by Mack; (7) conspicuously display Mack-approved service signs; (8) send at least one of every four mechanics employed at the authorized dealer's facility to the Mack Service Training School at Vigor's own expense; and (9) use Mack's trademarks "only in a form and manner specifically approved by [Mack] in writing in advance of such use."

[12]Theos does not claim that the work performed by Vigor was under the Mack warranty. The agreement, which dealt in part with Mack warranty service work by Vigor, stated that Mack "desire[d] to have authorized parts and service dealer facilities for Mack motor vehicles available in the area where [Vigor was] located"; was signed by two of Mack's vice-presidents; was not valid unless approved by one of Mack's officers; and had other provisions involving Mack or Mack approvals. Thus, the agreement arguably established mutual consent between Mack and Vigor as to warranty service work. Besides establishing an authorized service dealer in Vigor's locale, which Mack desired, the agreement benefited Mack by requiring that only genuine Mack or Mack-approved parts acquired from Mack's distributor be used in warranty service work. The agreement further provided that Vigor could do warranty work for Mack only after prior approval for the warranty service by Mack's authorized distributor, Manchester Mack, and that such warranty service had to be done in accordance with Mack's applicable standard warranty policy. Thus, it might be claimed that Mack exerted effective control over the warranty work, establishing the requisite mutual consent, benefit for, and control by, the principal necessary for the establishment of a principal-agent relationship between Mack and Vigor regarding Mack warranty service work. See *Kirkpatrick* v. *Boston Mut. Life Ins. Co.*, 393 Mass. 640, 645 (1985), quoting Restatement (Second) of Agency § 1 (1958). Other courts have held that an agency relationship may exist between a manufacturer and a dealer or authorized dealer for the purposes of performing warranty work. See, e.g., *Royal Lincoln-Mercury Sales* v. *Wallace*, 415 So. 2d 1024, 1028 (Miss. 1982); *Zwingman* v. *Kalhoff*, 244 Neb. 51, 520 (1993).

[13]Actual authority can be express or implied. See Restatement (Second) of Agency, *supra* at § 7 comment c. Actual authority results when the principal explicitly manifests consent, either through words or conduct, that the agent should act on behalf of the principal. See *Commonwealth Aluminum Corp.* v.

the agent's power to affect the principal's relations with third parties as manifested to the agent by the principal. See Restatement (Second) of Agency, *supra* at § 7.

Theos relies principally on the agreement to establish actual authority for Vigor to do this nonwarranty work on Mack's behalf. The agreement undeniably establishes several minimum requirements when such work is done by Vigor. Such service, for example, must be done in a "prompt and efficient" manner, "in accordance with [Mack's] policies and standards," and "except with the written consent of [Mack], will utilize . . . only parts manufactured or recommended by [Mack]." These requirements, however, are merely reflective of the ordinary desire of manufacturers to set sufficient minimum performance and quality standards to protect the good name of their trademark that they are allowing another to display. See *Oberlin* v. *Marlin Am. Corp.*, 596 F.2d 1322, 1327 (7th Cir. 1979); *Hunter Mining Labs., Inc.* v. *Management Assistance, Inc.*, 104 Nev. 568, 570-571 (1988). Cf. *Billops* v. *Magness Constr. Co.*, 391 A.2d 196, 197-198 (Del. 1978) (franchise agreements). They do not establish, without more, the kind of close control over Vigor's nonwarranty work that would indicate that Vigor was serving as Mack's agent for the work.[14] Unlike warranty work, for example, no prior approval is required for nonwarranty work under the agreement. Moreover, although not dispositive, we consider it not without significance that the agreement expressly states that Vigor is an "independent contractor . . . not . . . [an] agent" of Mack for the purposes of transacting business in the name of Mack nor for making any promises or representations on behalf of Mack.

In addition, Theos proffers no evidence that Mack knew of, or consented to, the servicing of the truck by Vigor, much less that Mack wanted Vigor to service the truck on Mack's behalf

---

*Baldwin Corp.*, 980 F. Supp. 598, 611 (D. Mass. 1997); Restatement (Second) of Agency, *supra* at § 7 and comment b. Implied authority is actual authority that evolves by implication from the conduct of the parties. See *T.D. Downing Co.* v. *Shawmut Corp.*, 245 Mass. 106, 113 (1923) ("relation of principal and agent may arise wholly by implication from the conduct of the parties and the circumstances of the particular case").

[14] We do not opine whether a manufacturer may be held liable for negligent repair work performed by an authorized dealer required by the manufacturer to perform service work according to stricter standards. Theos has not presented evidence that Mack exerted any control over the method of nonwarranty service work on Mack vehicles.

and authorized Vigor to do so. To the contrary, it is undisputed that Mack did not know of Vigor's service work on the truck until after it had been completed. We agree with the judgment that Theos did not advance evidence sufficient to raise a question of Mack's liability under an agency theory premised on actual authority.

Nor did Theos proffer evidence sufficient to raise an issue of vicarious liability premised on apparent authority. Apparent authority, is "created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second) of Agency, *supra* at § 27. See *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 16, cert. denied, 522 U.S. 1015 (1997), quoting *Hudson* v. *Massachusetts Prop. Ins. Underwriting Ass'n*, 386 Mass. 450, 457 (1982) ("Apparent authority results from conduct by the principal . . ."); *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 819 (1983). See also *Kansallis Fin. Ltd.* v. *Fern*, 421 Mass. 659, 665 (1996) ("there is little fairness in saddling the principal with liability for acts that a reasonable third party would not have supposed were taken on the principal's behalf"). Apparent authority exists only if the plaintiff reasonably relied on the principal's words or conduct at the time he entered the transaction that the agent is authorized to act on the principal's behalf. See *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.*, 343 Mass. 622, 626 (1962).[15] See also *Todd Farm Corp.* v. *Navistar Int'l Corp.*, 835 F.2d 1253, 1256 (8th Cir. 1987) (no apparent authority of equipment dealer to act for manufacturer where, inter alia, no evidence plaintiff aware of manufacturer's statements when it bought equipment nor reasonably relied on manufacturer's reputation when it did business with dealer).

As evidence of apparent authority, Theos relied on Mack's logo on Vigor's invoices, Mack's logos displayed at Vigor's place of business, that Vigor was required to display conspicu-

---

[15]In *Brownell* v. *Tide Water Associated Oil Co.*, 121 F.2d 239, 244 (1st Cir. 1941), the court, quoting *Davison* v. *Parks*, 79 N.H. 262, 263 (1919), said that the finding of apparent authority depends on showing "that the principal has either so conducted his business as to give third parties the right to believe that the act in question is one he has authorized his agent to do, or that it is one agents in that line of business are accustomed to do."

ously Mack-approved service signs provided by Mack, and Vigor's statement[16] to Theos that it was an authorized parts and service dealer of Mack. But the mere use of a trademark and other logos of the defendant is not sufficient to raise a genuine issue of material fact that the defendant cloaked Vigor with apparent authority. See *Sherman* v. *Texas Co.*, 340 Mass. 606, 608-609 (1960). See also *Gonzalez* v. *Walgreens Co.*, 878 F.2d 560, 562 (1st Cir. 1989) (franchisee's mere use of franchisor's logo, by itself, does not create genuine issue of material fact with respect to apparent authority)[17]; *Malmberg* v. *American Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994) (apparent authority based on actions of principal not agent; evidence of Honda logos on signs and literature at dealership not alone sufficient to create inference of agency); *Mobil Oil Corp.* v. *Bransford*, 648 So. 2d 119, 121 (Fla. 1995) (erroneous to give impression that "logos or other trademark symbols alone can create an apparent agency").

Similarly, Vigor's representation of itself as an authorized parts and service dealer of Mack is not a sufficient ground for Theos to reasonably believe that Vigor had apparent authority to act as Mack's agent for nonwarranty work. See *Connick* v. *Su-*

---

[16]"A statement by an agent to a third person with whom he deals, as to the extent of his authority, is admissible in evidence as an operative fact creating apparent authority upon proof that the agent was authorized to make the statement." Restatement (Second) of Agency, *supra* at § 27 comment c. See *Sheldon* v. *First Fed. Sav. & Loan Ass'n*, 566 F.2d 805, 808 (1st Cir. 1977).

[17]In *Gonzalez* v. *Walgreens Co.*, 878 F.2d 560 (1st Cir. 1989), the plaintiff's only argument was that Walgreen-Illinois should be held liable because it allowed Walgreen-San Patricio to use the Walgreen logo so as to hold the San Patricio store out to the public as a store owned and operated by Walgreen-Illinois and, therefore, Walgreen-Illinois should be liable for plaintiff's personal injuries. *Id.* at 561. The *Walgreens* court disagreed with the plaintiff and distinguished and explained *Gizzi* v. *Texaco, Inc.*, 437 F.2d 308 (3d Cir.), cert. denied, 404 U.S. 829 (1971), which was also cited by Theos: "In *Gizzi*, the majority concluded, over a dissent, that there was sufficient evidence to hold Texaco responsible for the acts of an independent service station owner. In *Gizzi*, however, there was evidence which was presented to show that Texaco exercised control over the activities of the service station which allegedly caused plaintiff's injuries. In *Gizzi*, among other facts, in addition to the use of Texaco insignia, there was evidence that Texaco engaged in extensive advertising to promote the impression that Texaco was substantially involved in the sale and service of cars sold and serviced at the station, that the oil company sold its products at the station, that the company owned pieces of equipment in the service station, and that Texaco had a regional office located directly opposite the station." *Id.* at 561-562. No such facts were established by Theos in this case.

*zuki Motor Co.*, 174 Ill. 2d 482, 498 (1996), quoting *Washington* v. *Courtesy Motor Sales, Inc.*, 48 Ill. App. 2d 380, 383 (1964) ("the term 'Authorized . . . Dealer' is in the nature of a trademark sign, which is used by independent dealers . . . and means nothing more than a dealer who sells [those] products"); *Cline* v. *Allis-Chalmers Corp.*, 690 S.W.2d 764, 769 (Ky. Ct. App. 1985) (simply being "authorized dealer" is insufficient to establish true agency). See also *Todd Farm Corp.* v. *Navistar Int'l Corp.*, *supra* at 1256 (jury could not reasonably find this authorized dealer had apparent authority to act for manufacturer); *Bruce* v. *ICI Americas, Inc.*, 933 F. Supp. 781, 789-790 (S.D. Iowa 1996) (insufficient control by manufacturer over authorized distributors to create question of material fact regarding existence of principal-agent relationship). Theos has established no facts to support a claim that Mack held out Vigor as Mack's agent, giving Vigor apparent authority to act on its behalf. See *Todd Farm Corp.* v. *Navistar Int'l Corp.*, *supra* at 1256; *Connick* v. *Suzuki Motor Co.*, *supra* at 498-499.

Moreover, Mack did not represent, persuade or otherwise manifest to Theos that it seek service from Vigor so as to create liability for Mack based on the malfeasance of Vigor. See Restatement (Second) of Agency, *supra* at § 267 comment a (principal's liability through apparent authority normally applies where plaintiff submitted himself to care of apparent agent in response to invitation from principal). Theos came forward with no evidence (other than the presence of Mack's logos) to suggest that Mack influenced Theos, through acts or words, to rely on servicing its truck at Vigor. We express no opinion as to whether an authorized dealer can maintain a separate action against the manufacturer for providing negligent service information. See note 5, *supra*.

*Judgment affirmed.*