Murphy, J.
This action was commenced by the plaintiff Banknorth, N.A., successor to Andover Bank (“Banknorth”) in the form of an Interpleader to resolve a dispute that had arisen between the defendant Oscar Kress, Trustee of I.O. Realty Trust and Trustee of Concord Acton Park Realty Trust (“Kress”) and the defendant LBM Financial, LLC (“LBM”). The parties’ dispute centers around the priority of mortgages granted in connection with the sale of commercial property located in Concord and Acton, Massachusetts. Both Kress and LBM claim to hold second mortgages on the property, and accordingly each alleges that they are entitled to the surplus remaining after the foreclosure sale of the property by Banknorth. Kress has brought cross claims against LBM and the defendant John McNulty, Trustee of KT Realty Trust (“McNulty”) for misrepresentation and fraud (Count I) and equitable subordination (Count III). This matter is before the Court on LBM’s motion for summary judgment as to the Interpleader filed by Banknorth, as well as to Counts I and III of Kress’ cross claim. LBM also seeks a judicial determination that the defendants Postemak, Blankstein & Lund, LLP and Meridian Engineering, Inc. are not entitled to any surplus funds. For the reasons set forth below, LBM’s motion for summary judgment is ALLOWED.
I. BACKGROUND
Pursuant to the summary judgment record, the undisputed material facts and the disputed facts viewed in the light most favorable to the non-moving party are as follows.[3]
On or about March 15, 2000, Kress and McNulty-entered into a Purchase and Sale Agreement (“P&S’j for three contiguous parcels of land located in Acton and Concord, Massachusetts. Kress, the seller of the property, had previously participated in approximately ten commercial and industrial real estate transactions. Kress was represented by the same attorney for each of these transactions. This attorney represented Kress throughout the events giving rise to this litigation, including the execution of the P&S. As part of the P&S, Kress agreed to take back a mortgage on the property in the amount of $290,000.00 at the time of closing. Pursuant to Paragraph 32 of the P&S, Kress was to fully subordinate his mortgage to “any lenders providing funding for Buyer’s acquisition or improvement of all or any portion of the property.”
At the closing on June 29, 2000, McNulty granted mortgages to Banknorth, Kress in the amount of $290,000.00, and LBM in the amount of $203,500.00. The Banknorth and LBM mortgages were for acquisition and development of the property. Notwithstanding the terms of Paragraph 32 of the P&S, the mortgages were recorded on June 30, 2000 in the following order: (1) Banknorth; (2) Kress; and (3) LBM. Subsequent to the closing, LBM informed McNulty of the apparent recording error.
On December 16, 2000, Kress and McNulty executed a Subordination Agreement (the “Agreement”), which by its terms subordinated Kress’ mortgage to LBM’s mortgage. At some point prior to the execution of the Agreement, McNulty told Kress that he had negotiated a $600,000.00 construction loan from a private party to develop a portion of the property, and that in return for Kress executing the Subordination Agreement, Kress’ loan would be partially paid down from the proceeds of this $600,000 construction loan.[4] The Agreement was executed under seal, and the parties mutually acknowledged the “receipt and sufficiency” of “good and valuable consideration.” No one from LBM had any contact with Kress prior to the execution of the Agreement. Nothing in the Agreement makes reference to a $600,000.00 construction loan. Kress reviewed the Agreement with his attorney prior to signing it.
McNulty subsequently defaulted on the mortgage granted to Banknorth, and as a result Banknorth foreclosed upon the first mortgage. At the foreclosure sale, Banknorth sold the property to the highest bidder, LBM, for $725,000.00.[5] After the payment of the Banknorth mortgage, there remained a surplus of $248,893.29, which Banknorth paid into this Court on April 7, 2003. As of June 27, 2003, LBM was owed $503,217.00 on its mortgage. The surplus funds currently held by the Court are insufficient to satisfy both the LBM mortgage and the Kress mortgage.
II. DISCUSSION
A. Summary Judgment Standard
Summary judgment is appropriate where there are no issues of genuine material fact and the moving *743 party is entitled to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, .436 Mass. 638, 643-44 (2002), citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); see also Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. When the non-moving party bears the burden of proof on an issue for which summary judgment is sought, that party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When presented with a motion for summary judgment, the court must consider the evidence in the light most favorable to the non-moving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995).
B. Fraud and Misrepresentation
For Kress to establish a cause of action for fraud or misrepresentation, he must show that the defendants “made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.” Barrett Associates, Inc. v. Aronson, 346 Mass. 150, 152 (1963), quoting Kilroy v. Barron, 326 Mass. 464, 465 (1950). It is undisputed Kress had no contact with any employee of LBM during the events giving rise to this litigation. Count I of Kress’ cross claim against LBM is therefore premised on the notion that McNulty was acting as LBM’s agent when he allegedly made a false misrepresentation of material fact to Kress.
In order for an agency relationship to exist, there must be a “manifestation of consent by one person to another that the other shall act on his behalf and subject to his control.” Kirkpatrick v. Boston Mut. Life Ins. Co., 393 Mass. 640, 645 (1985), quoting Restatement (Second) of Agency 1 (1958). Although the question of agency is normally for a jury to determine, Pedersen v. Leahy, 397 Mass. 689, 691 (1986), summary judgment is appropriate where the plaintiff fails to advance specific facts sufficient to demonstrate the existence of a genuine issue of material fact as to the existence of an agency relationship. Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000); Spencer v. Doyle, 50 Mass.App.Ct. 6, 8 (2000).
Kress has failed to meet his burden of demonstrating that LBM exercised the requisite degree of control over McNulty. The mere fact that McNulty obtained a subordination of the Kress mortgage at some point after he was contacted by LBM and advised of the recording error is wholly insufficient to establish the sort of “close control” that the Supreme Judicial Court has indicated is necessary to create a triable issue as to the existence of an agency relationship. Theos, 431 Mass. at 744.
Likewise, Kress has failed to adduce specific facts in support of his claim that McNulty was acting with the apparent authority of LBM. “Apparent authority is ‘created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.’ ” Theos, 431 Mass. at 745, quoting Restatement (Second) of Agency 27 (1958) (emphasis added). By Kress’ own admission, no one from LBM ever contacted him regarding the Subordination Agreement. Since Kress has not set forth any evidence of conduct by the principal, LBM, that would have caused Kress to believe that McNulty was acting with LBM’s consent, Kress’ claim of apparent authority must fail as a matter of law. Given Kress’ failure to set forth a genuine issue of material fact as to the existence of an agency relationship, LBM is entitled to summary judgment on Count I of Kress’ cross claim.
C. Validity of the Subordination Agreement
The language contained in the Subordination Agreement is clear on its face: it provides that “[t]he [Kress] Mortgage shall be in all respects subject and subordinate to the [LBM] Mortgage and shall have the same force and effect as though the [Kress] Mortgage had been executed, delivered and registered immediately after the execution, delivery and registration of the [LBM] Mortgage to LBM.” Kress contends, however, that the Agreement is invalid for lack of consideration, because he never received any proceeds from the $600,000 loan McNulty allegedly promised prior to the execution of the Agreement.
Kress’ argument on this point is unavailing for two reasons. First, the Agreement was executed under seal, and the parties mutually acknowledged the “receipt and sufficiency” of “good and valuable consideration.” It is axiomatic that an agreement signed under seal will not be rendered unenforceable for insufficiency of consideration. Johnson v. Norton Hous. Auth., 375 Mass. 192, 195 (1978), and cases cited. Second, since the Agreement itself is unambiguous on its face, and it makes no mention of McNulty’s alleged $600,000 loan promise, the parol evidence rule forecloses Kress from relying on the contents of any preliminary discussions with McNulty to undermine the express terms of the Subordination Agreement. Community Builders, Inc. v. Indian Motocycle Associates, Inc., 44 Mass.App.Ct 537, 552 (1998), citing New *744 England Fin. Resources, Inc. v. Coulouras, 30 Mass.App.Ct. 140, 145 (1991).
D. Equitable Subordination
Count III of Kress’ cross claim, entitled “Equitable Subordination,” appears to be in the nature of a request for equitable relief. Cross Claim at par. 21 (“As a result of the conduct of LBM Financial, LLC and John McNulty as described above, the mortgage of LBM Financial, LLC should be subordinated to the Kress Mortgage"). However, the equities in this case weigh heavily in the favor of LBM.
As noted above, the Subordination Agreement is clear on its face. The dealings between the parties in this case were all at arms length. Kress is hardly a novice when it comes to commercial real estate transactions, given that he has participated in approximately ten commercial real estate development projects. Moreover, it is also undisputed that Kress’ attorney had represented him for each of these previous transactions, that Kress paid him $7500 for his services with regard to the transaction at issue in this litigation, and that Kress reviewed the Subordination Agreement with his attorney prior to signing it.[6] There can be no doubt that Kress fully understood the implications of his entering into the Subordination Agreement.
Finally, it is worth noting that the terms of the P&S clearly contemplate the result provided for in the Subordination Agreement. Pursuant to Paragraph 32 of the P&S, Kress was to fully subordinate his mortgage to “any lenders providing funding for Buyer’s acquisition or improvement of all or any portion of the property.” Since this is precisely what was achieved by virtue of the Subordination Agreement, Kress cannot not now claim that he is entitled, as a matter of equity, to have the LBM mortgage subordinated to his mortgage. Accordingly, LBM is entitled to summary judgment on Count III of Kress’ cross claim.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant LBM Financial, LLC’s motion for summary judgment is ALLOWED.

As an initial matter, Kress contends that LBM’s motion for summary judgment should be denied due to LBM’s purported failure to comply with the requirements of Superior Court Rule 9A(b)(5). In its memorandum in support of summary judgment, LBM does set forth, in separate numbered paragraphs and with citations to the evidentiary record, the undisputed material facts of the case. Accordingly, Kress’ argument on this point is without merit.

In his Answer to Kress’ cross claim, McNulty specifically denies making any such statement to Kress.

LBM denies that it purchased the property at the foreclosure sale. Instead, LBM asserts that Kirk Hundley, Trustee of KMLB Realty Trust, purchased the property for $725,000.00.

Kress testified that the subordination agreement which he seeks to set aside in this action might have been prepared by his own attorney.