Troy, Paul E., J.
The plaintiff, Hady Elahmar (Elahmar), a former employee of defendants Saab 1 Enterprises, Inc. (Saab Enterprises) and Ghazi Saab (Saab),[3] alleges that defendants Motiva Enterprises LLC (Motiva),[4] Saab Enterprises, and Saab failed to maintain and/or provide workers’ compensation to Elahmar following an injury Elahmar sustained in the course of his employment. Saab Enterprises and Saab (collectively the Saab defendants) filed a third-party complaint against third-party defendants Rodman Insurance Agency, Inc. (Rodman) and Charter Oak Insurance Co. (Charter Oak), who allegedly obtained and provided workers’ compensation insurance for Saab Enterprises, and denied Saab Enterprises’ workers’ compensation claim following Elahmar’s injury. The Saab defendants allege claims against Rodman and Charter Oak for breach of contract (Counts I and V); negligence (Counts II and VI); misrepresentation (Counts III and VII); violation of G.L.c. 93A (Count IV);[5] and vicarious liability (Count VIII).[6] Charter Oak now moves for summary judgment on all counts of the third-party complaint. After hearing, and for the reasons discussed below, Charter Oak’s motion for summary judgment is ALLOWED in part and DENIED in part.
FACTUAL BACKGROUND
The undisputed facts and the disputed facts[7] viewed in the light most favorable to the non-moving party, as revealed by the summary judgment record, are as follows.
Saab Enterprises, d/b/a Brockton Shell and Food Mart, operated gas stations and adjacent convenience stores at multiple locations in Brockton, including one at 1260 Main Street. Saab Enterprises’ corporate office is located at 253 East Ashland Street. Saab Enterprises obtained a workers’ compensation and employer’s liability insurance policy from Charter Oak through Rodman, an insurance broker.[8] The policy covered the term September 13, 2001 through September 13, 2002 and contained an information page, which set forth certain information relating to the coverage available under the policy. Item 1 of the information page stated the following:
Insured:
Brockton Shell Food Mart
DBA Saab One Enterprises
253 East Ashland Street
Brockton, MA 02401.
Item 3A of the information page stated the following:
Workers Compensation Insurance: Part one of the policy applies to the Workers Compensation Law of the State(s) listed here:
MA.
The policy also included a form, Form WC 00 00 00 (A), titled “Workers’ Compensation and Employers Liability Insurance Policy.” The “General Section” of the form states the following:
This policy covers all of your workplaces listed in Items 1 or 4 of the information page; and it covers all other workplaces in Item 3A states unless you have other insurance or are self-insured for such workplaces.
The policy also includes an extension of the information page, Schedule WC 00 00 01 (A). As with the information page, this schedule identifies the insured as Brockton Shell Food Mart d/b/a Saab Enterprises, and provides that the insured’s location is 253 East Ashland Street, Brockton, MA.
Elahmar was employed by Saab Enterprises as a store clerk. On June 3, 2002, Elahmar suffered serious personal injuries in the course of his employment with Saab Enterprises when the Food Mart at the Main Street location was robbed and the perpetrator shot Elahmar. Elahmar sought workers’ compensation from Saab Enterprises. In turn, Saab Enterprises informed Rodman and Charter Oak of Elahmar’s claim. Charter Oak denied the claim, stating that the Main Street location was not covered by Saab Enterprises’ policy. When Saab Enterprises failed to provide workers’ compensation to Elahmar, Elahmar brought suit against Motiva, Saab Enterprises, and Saab for their alleged failure to maintain workers’ compensation coverage at the Main Street location on June 3, 2002, in violation of G.L.c. 152, §§66-67.
Subsequently, the Saab defendants commenced a third-party action against Rodman and Charter Oak, alleging that the Main Street location, and all of the other gas stations operated by Saab Enterprises, were covered under the Charter Oak policy. To support this allegation, the Saab defendants allege that Rodman’s agent believed that all of the gas stations were covered by Charter Oak’s policy, that Motiva believed that the gas stations were covered under the policy,[9] that the amount of the premium paid to Charter Oak was established based on coverage for all of the gas stations,[10] and that Rodman forwarded Saab Enterprises’ premium payments to Charter Oak.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Corr., 390 Mass 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); MassR.Civ.P. 56(c). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate *191 the absence of a triable issue either by submitting affirmative evidence negating all essential elements of the non-moving party’s claim, or by showing that the non-moving parly has no reasonable expectation of proving an essential element of its claim at trial. See Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
I.Interpretation of Insurance Policy as a Matter of Law
Charter Oak asserts that the court has the authority to grant summary judgment in its favor because interpretation of an insurance policy is a matter of law and the policy indicates that the Main Street location was not covered. The Saab defendants argue that the issue at bar is a not a matter of law, but rather a disputed issue of material fact regarding ambiguous terms of the contract. Specifically, the Saab defendants state that the policy does not clearly identify whether it covered all of the gas stations, including the Main Street location, or just the Ashland Street location.
The interpretation of unambiguous language in an insurance policy is a matter of law reserved for the court. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003). When the words of the contract are not ambiguous, the contract will be enforced according to its terms. Mejia v. American Casualty Co., 55 Mass.App.Ct. 461, 465 (2002). A term is ambiguous if it is susceptible to more than one meaning and reasonably intelligent people would differ as to which meaning is correct. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). Further, when an insurance contract is deemed ambiguous, Massachusetts courts interpret it in a manner most favorable to the insured. Id.
Here, the terms of the policy are ambiguous. The Ashland Street location is listed as the “insured” in Item 1 of the information page. Item 3A of the information page states that the policy applies to the Workers’ Compensation Laws of Massachusetts. Form WC 00 00 00 (A) states that the policy covers all of the workplaces listed in Items l,[11] thus the Ashland Street is covered under the policy. Because the other gas stations are not listed in Item 1, they do not appear to be covered. However, the form goes on to say that the policy covers “all other workplaces in Item 3A states.” As Item 3A lists the state of Massachusetts, and the gas stations at issue, including the Main Street location where Elahmar was shot, are all located in Massachusetts, there is at least some ambiguity as to whether the gas stations operated by Saab Enterprises are covered under the policy. See id. Thus, the court cannot say that the policy provides no coverage for Elahmar’s injury as a matter of law and summary judgment cannot be granted. See id.; Cassesso, 390 Mass at 422.
II.Negligence
Charter Oak contends that Count VI — negligence— must be dismissed because a finding of negligence against Charter Oak would render the policy meaningless. Specifically, Charter Oak argues that allowing the Saab defendants to plead negligence would allow the Saab defendants to recover against Charter Oak under the policy, despite the fact that the policy did not provide coverage. The Saab defendants argue that they are simply pleading in the alternative; the policy does cover the Main Street location, but, if the policy does not cover the Main Street location, then Charter Oak was negligent in processing Saab’s applications and procuring insurance coverage.
First, Charter Oak’s argument turns on the court’s determination that the policy does not cover the Main Street location as a matter of law. Because the court has made no such determination, the court will not grant summary judgment as to the Saab defendants’ negligence claim. Further, the court notes that a party may set forth two or more statements of a claim alternatively — either in one count or separate counts — and that a party may state as many separate claims as it has, regardless of consistency. Mass.R.Civ.P. 8(e)(2). Thus, the court takes no issue with the Saab defendants’ alternative pleading. See id.
III.Vicarious Liability
Finally, Charter Oak argues that the court must grant summary judgment on Counts VII and VIII— misrepresentation and vicarious liability — because these counts allege liability for Rodman’s allegedly tortious conduct. Specifically, Count VII avers that Charter Oak should be held liable for misrepresentation because “Rodman had made material statements of misrepresentation to Saab indicating that it had insurance coverage in place” and that Saab “relied on said representations.” Count VIII alleges that Charter Oak is vicariously liable for the “acts, omissions, negligence, and breach of contract, committed by its agent, Rodman.” Charter Oak contends that these counts must be dismissed because Rodman is not its agent and, as such, Charter Oak cannot be held liable for Rodman’s conduct. The Saab defendants argue that Rodman was Charter Oak’s agent under the theory of apparent authority. Specifically, the Saab defendants contend that Charter Oak’s “(receipt of] Saab Enterprises’ premium payments on the policy, issu[ance] of a policy, maintain [anee] of authority to review, audit, and investigate the insured and other other elements of oversight” was sufficient to lead the Saab defendants to conclude that Rodman had authority to act as Charter Oak’s agent.
A principal is subject to liability for its agent’s conduct where the agent was acting within his authority or apparent authority. Theo & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 743 (2000). Apparent authority arises where a principal engages in conduct that causes a third party to believe that an agent has authority to act on the principal’s behalf. Hudson, 386 Mass. at 457-58; see also Haufler v. Zoto, 446 Mass. 489, 498 n.22 (2006). When a customer retains a broker to obtain insurance for him from an insurance *192 company, he has no reason to believe that the broker has become an agent of the insurance company, short of some conduct on the part of the company that would reasonably cause the customer to believe that such an agency relationship existed. Id. Here, Saab stated that he did not know whether Rodman worked for Charter Oak and that he had no personal knowledge of the relationship between Rodman and Charter Oak. Further, there is' no evidence in the record indicating that there were any communications between the Saab defendant’s and Charter Oak regarding Rodman. In light of the lack of evidence in the record to support the Saab defendant’s contention that Charter Oak engaged in conduct that led the Saab defendants to reasonably believe that Rodman was Charter Oak’s agent, the court cannot find that there was an agency relationship between Rodman and Charter Oak under a theory of apparent authority. See id. As such, Charter Oak cannot be held liable for Rodman’s conduct and summary judgment must be granted in favor of Charter Oak as to Counts VII and VIII. See Theo & Sons, Inc., 431 Mass. at 743; Hudson, 386 Mass. at ' 457-58.
ORDER
For the foregoing reasons, it is hereby ORDERED that Charter Oak’s motion for summary judgment is ALLOWED as to counts VII and VIII of the third-party complaint and DENIED as to all other counts.

 Saab is the president of Saab Enterpnses.

 Motiva refines, sells, and distributes gasoline in the United States at Shell brand service stations and supplied fuel and other products to Saab Enterprises.

 The c. 93A claim was brought solely against Rodman.'

 The vicarious liability claim was brought solely against Charter Oak.

 Charter Oak submitted a statement of undisputed facts, as required by Superior Court R. 9A. The Saab defendants failed to submit a response to Charter Oak’s statement of undisputed facts. Thus, according to Rule 9A, the facts set forth in Charter Oak’s statement would be deemed admitted. Despite the procedures set forth in 9A, however, the court cannot ignore the plain language of the contract, which contradicts some of the undisputed facts set forth by Charter Oak.

 An insurance broker is defined as an individual “who for compensation acts or aids in negotiating policies of insurance.” Hudson v. Mass. Prop. Ins. Underwriting Ass’n, 386 Mass. 450, 455 (1982). An insurance agent is defined as an individual "who for compensation solicits insurance on behalf of any company.” Id, Rodman is categorized as a broker because the record does not demonstrate that it solicited insurance on behalf of Charter Oak. Specifically, although the complaint alleges that Rodman solicited insurance on behalf of Charter Oak, Saab’s deposition testimony states that Saab did not know whether Rodman worked for Charter Oak and that Saab had no personal knowledge of the relationship between Rodman and Charter Oak.

 As noted above, Motiva supplied fuel and other products to Saab Enterprises. In return, Saab Enterprises was required to forward copies of its insurance policies, which Motiva audited and reviewed to insure that Saab Enterprises was properly insured. Motiva was allegedly satisfied that all of the gas stations operated by Saab Enterprises were covered under Charter Oak’s policy.

 Specifically, the basis for payment of the insurance premium was calculated based on the total number of people on the payroll and Saab Enterprises employees working at all of the gas station locations were included on the payroll.

 The form also states that it covers all workplaces listed in Item 4, however, Item 4 pertains to the determination of premiums and has no bearing on the coverage issues before the court.