NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12231

JOSEPH FERGUS <u>vs</u>. STEVEN A. ROSS.[1]


Suffolk.     April 4, 2017. - August 2, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.



<u>Agency</u>, Scope of authority or employment.  <u>Attorney at Law</u>,
     Attorney-client relationship.



<u>Civil action</u> commenced in the Superior Court Department on
August 31, 2010.

The case was heard by <u>Frances A. McIntyre</u>, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


<u>Arnold E. Cohen</u> for the defendant.
<u>Gordon E. Feener</u> (<u>Danielle F. Wehrli</u> also present) for the
plaintiff.


LOWY, J.  In a jury-waived trial, a Superior Court judge

determined that the defendant, Attorney Steven A. Ross, was

negligent for his part in financing a real estate loan to the

---

[1] Individually and as trustee of the Wisconsin Avenue
Lending Trust.

plaintiff, Joseph Fergus. The judge found that the defendant had conferred apparent authority on an individual, Bernard Laverty, Jr., to act as his agent for the loan. In the course of arranging the loan, unbeknownst to the defendant, Laverty asked the plaintiff to use a portion of the loan from the defendant to make a secured "side loan" to Laverty. The plaintiff agreed. Ultimately, however, the side loan was unsecured and Laverty defaulted. Relying on the rule that imputes the knowledge of an agent to the principal, the judge found that the defendant was negligent for failing to inform the plaintiff prior to the closing that the side loan was not secured. We now reverse, concluding that the facts found by the trial judge failed to establish that Laverty had the apparent authority to bind the defendant with respect to the side loan.

Background. The judge made the following factual findings, which the parties do not dispute on appeal.

The plaintiff, a regular purchaser and seller of real estate, needed between $75,000 and $100,000 to complete renovations of a property in the Dorchester section of Boston. Unable to acquire conventional financing for the project, he inquired about private financing through a mortgage broker, who referred the plaintiff to Laverty.

Laverty had an existing relationship with the defendant, who operated a private lending operation through his law firm.

Laverty had received five or six loans from the defendant and had previously referred potential borrowers to the defendant. Laverty informed the defendant of the plaintiff's desire for a loan. Although the defendant had paid Laverty referral fees on other occasions, he did not do so for the plaintiff's loan.

When the plaintiff and Laverty met, Laverty implored the plaintiff to seek more money than he needed for the renovations, so that the plaintiff could make a side loan to Laverty. Laverty needed $120,000 to close on a residential property in Marshfield. Laverty offered to provide the plaintiff "a deed-in-lieu" of a mortgage to secure the side loan. The plaintiff agreed. Notwithstanding his ultimate failure to do so, Laverty intended to provide the deed-in-lieu and to repay the $120,000.

Prior to the closing, the plaintiff had no direct contact with the defendant. Rather, all discussions with the defendant and the law firm regarding the loan were conducted by Laverty, outside of the plaintiff's presence. Although the defendant insulated himself from any direct contact with the plaintiff, the parties arranged, through Laverty, for the defendant's wife to inspect the Dorchester property, on the law firm's behalf. She was told that the proceeds of the loan would be used for the renovations.

The law firm set the value of the loan to the plaintiff at $260,000, which included the costs of the loan itself such as

prepaid interest, origination fees, and appraisal and legal fees. This amount provided sufficient funds for the plaintiff to spend the necessary $75,000 to $100,000 on renovations at the Dorchester property and make the $120,000 side loan to the defendant. The law firm created an entity for the sole purpose of providing the loan, as had apparently been its practice for other loans, called the Wisconsin Avenue Lending Trust (trust). The trustee for this entity was an apparently fictitious individual named "Ronald Williams," although it was not clear that the entire trust was built of straw.

The trust formally communicated its offer for the $260,000 loan (Dorchester loan) by way of a commitment letter, signed by the defendant on behalf of the trust. On September 10, 2007, Laverty brought the commitment letter specifying the terms to the plaintiff, who accepted that day. The plaintiff also agreed to pay the $2,500 legal fees of the lender. The letter did not mention the side loan. Nevertheless, the plaintiff signed the letter and gave it to Laverty to give to the law firm, relying on Laverty's representations that the defendant would serve as the closing agent for both the Dorchester loan and the side loan.

On the same day, the plaintiff also handwrote a letter to the defendant, explaining that Laverty was to receive a $120,000 loan from the plaintiff, drawn from the proceeds of the

Dorchester loan. The letter authorized the defendant to arrange the requisite paperwork for the side loan. Laverty also took this letter, representing to the plaintiff that he would deliver it to the defendant. He never did so.

The next day, Laverty drove the plaintiff to the defendant's office for the closing, where the plaintiff and the defendant met for the first time. The plaintiff signed all of the loan documents, without reading them, but with an understanding of the fundamental requirements: he would be obligated to pay back the principal within ninety days and he was granting a mortgage. The side loan, however, was not mentioned at the closing or referenced in any of the documents. Nor did Laverty have title to the Marshfield property such that he could provide the plaintiff a deed-in-lieu of a mortgage. The plaintiff signed the documents with a willingness to be bound by them. The next day, the plaintiff obtained a bank check in the amount of $120,000, payable to Laverty. Laverty subsequently declared bankruptcy and did not repay the plaintiff.

The judge concluded that the defendant had a duty as the "closing agent" for the transaction to advise the plaintiff regarding the deficiencies of the side loan. Although the defendant did not have actual knowledge of the side loan or its terms, the defendant was deemed to have constructive knowledge

through his agent, Laverty. The defendant did not inform the plaintiff that Laverty lacked title to the property that was to serve as security for the side loan, and thus, the judge found, the defendant committed a breach of this duty. The judge credited the plaintiff's testimony that he would not have proceeded with the side loan if he had known it was unsecured.

The defendant timely appealed, and the Appeals Court affirmed. Fergus v. Ross, 89 Mass. App. Ct. 528, 535-536 (2016). We granted the defendant's application for further appellate review and now reverse.

Discussion. On appeal, the defendant argues that the judge erred in two key respects. First, the defendant argues that the judge lacked an adequate basis to find that the defendant had conferred apparent authority on Laverty with respect to the side loan. Second, the defendant claims that he owed no duty to the plaintiff regarding the side loan as the "closing agent" for the Dorchester loan.

We agree that there was an insufficient basis to conclude that the defendant conferred apparent authority on Laverty for the side loan. As a result, the defendant lacked constructive knowledge of the side loan, which was essential to the breach of the alleged duty. Thus, the finding of negligence must be reversed.

1.  Agency.  "[T]he question of agency is usually an issue for the fact finder."  Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000) (Theos).  Thus, the question before us is whether there was an adequate basis for the judge to conclude that an agency relationship existed, pursuant to Laverty's apparent authority.

Generally, an agency relationship is created by express or implied mutual consent that an agent will "act on behalf and for the benefit of the principal, and subject to the principal's control."  Theos, 431 Mass. at 742.  See Restatement (Third) of Agency § 1.01 (2006).  See also Haufler v. Zotos, 446 Mass. 489, 498 (2006) (judge's finding of agency not clearly erroneous).  The agent may impose legal obligations or otherwise bind the principal, based on the agent's either actual or apparent authority to do so.  Theos, supra at 743.  A principal is liable for the agent's conduct when the agent acts with "the actual or apparent authority of the principal in that transaction."  Id.  In this case, the judge found an agency relationship between the defendant and Laverty based exclusively on apparent authority.

Apparent authority exists when the principal, by his or her words or conduct, causes a third person to reasonably believe that the principal consents to the agent acting on the principal's behalf.  Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 801 (2014).  Critically, "[o]nly the words and

conduct of the principal, . . . and not those of the agent, are considered in determining the existence of apparent authority." Id. The principal's manifestation of apparent authority does not need to be direct communication with the third party. See Restatement (Third) of Agency, supra at §§ 2.03, 3.03. See also Menard & Co. Masonry Bldg. Contractors v. Marshall Bldg. Sys., Inc., 539 A.2d 523, 526 (R.I. 1988). The principal can also ratify an agent's conduct after the fact, by "acquiesc[ing] in the agent's action, or fail[ing] promptly to disavow the unauthorized conduct after disclosure of material facts" (citation omitted). Licata, supra at 802.

The judge found that the defendant's conduct allowed the plaintiff reasonably to conclude that Laverty had the authority to act on the defendant's behalf with respect to the side loan, relying primarily on four facts. First, the defendant had no contact with the plaintiff until the closing. All communication from the defendant to the plaintiff, and vice versa, went through Laverty. Thus, it was through Laverty that the defendant's wife inspected the property on behalf of the law firm. Second, the plaintiff never requested a specific amount for the loan, but rather the terms in the commitment letter were set by the law firm, ostensibly pursuant to Laverty's representations. Third, Laverty had, in the past, referred borrowers to the defendant in exchange for a fee, although no

such fee was paid in this case. Fourth, the closing took place in the law firm's office, where Laverty brought the plaintiff. Laverty remained there throughout the closing, urging the plaintiff to sign the papers.

These facts may well have been sufficient to conclude that Laverty was the defendant's agent with respect to the Dorchester loan. See DeVaux v. American Home Assur. Co., 387 Mass. 814, 816-817, 819 (1983) (fact finder could conclude that attorney's secretary, who answered telephone, gave advice to prospective client, and misfiled client's letter requesting service, had apparent authority to bind attorney who lacked actual knowledge). As such, the defendant could have been liable for any fraudulent, negligent, or deceitful conduct by Laverty. The judge, however, specifically found that Laverty lacked any fraudulent intent, and she did not make any finding that Laverty was negligent.[2]

---

[2] We note also that, although the judge found that the defendant "entirely insulated himself" from direct contact with the plaintiff, the judge did not find that the defendant was wilfully ignorant of the side loan. See Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 802 (2014) (there may be ratification of agent's conduct "when [the principal] shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately" [citation omitted]). Furthermore, the judge rejected the plaintiff's claims pursuant to G. L. c. 93A, for breach of contract, and for fraudulent misrepresentation, and the plaintiff does not appeal from those rulings.

Instead, the defendant's liability was premised on Laverty's theoretical apparent authority to bind the defendant to assume some form of responsibility for the side loan. Yet, the judge did not find any conduct of the defendant that related specifically to his acquiescence to, or ratification of, Laverty's conduct regarding the side loan.

Although the judge identified facts suggesting that Laverty was, in some capacity, the defendant's agent, they do not connect any manifestation of acquiescence by the defendant to the side loan. See Licata, 466 Mass. at 801-802 (alleged agent's signature as authorized representative did not establish apparent authority in absence of manifestation of assent by principal). To the contrary, the plaintiff knew from the outset that he was receiving a loan from the trust, through the defendant and his law firm, and the judge did not find that the plaintiff believed that Laverty was the defendant's employee. Contrast DeVaux, 387 Mass. at 819 & n.10 (factual question whether attorney's secretary had actual or apparent authority to establish attorney-client relationship). Only the words and conduct of the would-be agent, Laverty, connected the defendant to the side loan, and they are insufficient to create apparent authority as to the side loan. See Licata, supra at 801; Theos, 431 Mass. at 745.

Nor do the findings of the judge support a conclusion that the defendant ratified Laverty's representations after the fact. Where authority is premised on ratification by the principal, the "[r]atification must be based upon full knowledge of all material facts," or evidence of wilful ignorance. Licata, 466 Mass. at 802, quoting Kidder v. Greenman, 283 Mass. 601, 615 (1933). By the same token, a principal does not have an obligation to disavow the agent's conduct, in the absence of actual knowledge. Licata, supra at 803, citing See v. Norris, 234 Mass. 345, 348 (1920). The judge did not find that the defendant knew about the side loan, and specifically found that the defendant did not know that Laverty lacked the title for the property intended to serve as security for the side loan.[3]

---

[3] The Appeals Court and the parties have made much of the judge's "belie[f]" that the defendant "may well have known" about the side loan, based on the amount by which the Dorchester loan exceeded the cost of the renovations. See Fergus v. Ross, 89 Mass. App. Ct. 528, 533-534 (2016). Whether this constitutes a finding that the defendant knew generally of the side loan is not clear. The judge's findings, however, are clear that the defendant did not actually know the details of the side loan that he failed to disclose (i.e., that the side loan was not secured). Instead, the defendant's liability was premised exclusively on constructive knowledge pursuant to his agency relationship with Laverty. Therefore, anything that the defendant might -- or should -- have known about the side loan or Laverty's lack of title is irrelevant to the theory of negligence for which the defendant was ultimately found liable. We make no ruling as to whether the defendant could have been found liable using a different theory of negligence on these facts.

Further, the judge did not find that the defendant was wilfully ignorant of these facts.

Moreover, the commitment letter and loan documents prepared by the defendant made no mention of the side loan. Thus, if the plaintiff had read the documents, he would have seen that the defendant was not contemplating the side loan to Laverty as part of the Dorchester loan to the plaintiff. See Licata, 466 Mass. at 802. See also Haufler, 446 Mass. at 501 ("The general rule is, that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not" [citation omitted]). Based on these findings by the judge, it was not reasonable for the plaintiff to rely "on everything that was told [to him by Laverty] about getting this loan," instead of the contents of the loan documents.[4] See Licata, supra.

2. Duty of care. The defendant also argues that he could not owe a duty to the plaintiff as a "closing agent" for the transaction, where the judge found that the defendant and plaintiff did not form an attorney-client relationship. We need

---

[4] The judge found that the plaintiff expected to receive the deed-in-lieu of a mortgage for the Marshfield property at some later point in time. The judge's findings do not specify whether the plaintiff understood that he was not signing any documents related to the side loan at the closing. The judge's findings, however, appear to reflect that the plaintiff did not understand the documents he was signing, and also that he did not read them.

not examine whether a duty would have been owed if Laverty had possessed the apparent authority to impose a duty of care upon the defendant, or whether Laverty's representation that the defendant would "take care of everything" constituted an enforceable promise on these facts. See Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524, cert. denied, 493 U.S. 894 (1989) ("[A]n attorney owes a duty to nonclients who the attorney knows will rely on the services rendered").

In this case, the theory of negligence was premised on imputing Laverty's knowledge of the side loan to the defendant, as a result of their agency relationship. See Sunrise Props., Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 425 Mass. 63, 66-67 (1997) (agent's knowledge imputed to principal in absence of fraud by agent that does not benefit principal). Because Laverty lacked the requisite apparent authority, Laverty's knowledge is not imputable to the defendant. See id. Therefore, the defendant cannot be negligent for failing to disclose or disavow that which he did not know, either actually or constructively.

Conclusion. The facts found by the judge are insufficient to conclude that Laverty had apparent authority from the defendant to bind the defendant as a closing agent for the side loan. No conduct of the defendant manifested acquiescence to participation in the side loan. Nor did the defendant ratify

Laverty's conduct after the fact, because the loan documents drafted by the defendant contained no reference to the side loan.  Thus, the theory of negligence on which the defendant was found liable fails, because it was premised on the imputation of Laverty's knowledge to the defendant pursuant to the alleged agency relationship.

<u>Judgment reversed</u>.