The plaintiff, St. John's Holdings, LLC (St. John's), filed a verified complaint in the Land Court averring breach of contract and seeking declaratory relief and specific performance. St. John's claimed that the defendant, Two Electronics LLC (Two Electronics), was obligated to sell its property at 2 Electronics Drive in Danvers to St. John's, pursuant to what St. John's claims was a binding letter of intent.[2] The judge held a bench trial to determine whether Two Electronics's real estate broker had actual or apparent authority to bind Two Electronics to sell the property. The judge ruled in favor of Two Electronics, finding that the broker had no such authority. St. John's appeals from the judgment dismissing the complaint. We affirm.
Background. Neither party challenges the judge's detailed findings of fact delineated in his comprehensive decision. Relevant to the present appeal, the judge found as follows. In December, 2015, Matthew Piccione, the manager of Two Electronics, met at a restaurant with Frederick McDonald, the manager of St John's, to discuss leasing the property as a medical marijuana facility. Also in attendance were Timothy Barry, a licensed real estate broker who worked for Two Electronics,[3] and Stephen Cefalo, a licensed real estate broker who acted as broker and authorized agent of St. John's. When the meeting ended, "Piccione directed Cefalo and McDonald to go through Barry for any discussions about the [p]roperty." In January, 2016, Barry and Piccione advised Cefalo and McDonald that Two Electronics could not lease space to St. John's, but would entertain a purchase and sale of the property. The four men subsequently met twice in person to discuss potential terms of such a transaction. "These meetings were held at the request of McDonald because he believed that the negotiations through the two brokers were not very efficient and he wanted to speak to Piccione directly." At the second meeting, held on January 23, 2016, "McDonald believed they were close to reaching a deal, but Piccione wanted a signed offer." At the close of both meetings, Piccione told McDonald to "work through Barry," or words to that effect. Following the meetings, Cefalo sent an electronic mail message (e-mail) to McDonald that stated, in relevant part, that "[Barry] thought the new terms seemed reasonable. But of course [Barry] could not speak for Matt [Piccione]."
On January 27, 2016, Cefalo, on behalf of St. John's, e-mailed a document titled "Binding Letter of Intent" (first LOI) to Barry that contained a description of terms under which St. John's offered to purchase the property. The first LOI was not signed by a representative of St. John's. Barry forwarded the first LOI to Piccione who made comments about the terms to which he was agreeable and those he would like revised. Barry conveyed Piccione's comments to Cefalo, and Cefalo conveyed them to McDonald. On January 29, 2016, Cefalo e-mailed a second "Binding Letter of Intent" (second LOI) to Barry, which he forwarded to Piccione, who again made comments concerning certain terms he would like revised. The second LOI was not signed by a representative of St. John's.
On February 1, 2016, Barry sent an e-mail to Cefalo stating, inter alia, that Piccione was "ready to do this," but had three issues with the terms contained in the second LOI. Barry's e-mail concluded with the statement, "[s]ounds encouraging." Later that same day, Cefalo stated in an e-mail to McDonald's partner, Matt Philbin, which was subsequently forwarded to McDonald, "that he believed that Barry was not on the same page as Piccione with regard to the sale of the [p]roperty based on his perception that Piccione was changing his mind and kept 'moving the goal post.' " The e-mail from Cefalo further stated, "[s]eller not willing to assist in a deal that from what I can see is the best deal he will ever have on this property. None of us get it, including the seller[']s broker."
On February 2, 2016, McDonald sent Cefalo an e-mail attaching a third written "Binding Letter of Intent" (final LOI), which Cefalo sent to Barry via e-mail. Once again, the final LOI was not signed by a representative of St. John's. "None of the issues raised in the February 1, 2016 e[-]mail from Barry to Cefalo were incorporated into the [f]inal LOI." Also, the final LOI set forth a method for Two Electronics to accept the offer from St. John's, "by signing and returning a copy of this letter ... no later than Feb. 4, 2016." Piccione did not review the substance of the final LOI because the document was not signed by St. John's, and he did not consider anything to be an offer until it was signed.
On February 3, 2016, in response to telephonic text messages from Barry, Piccione sent a text message to Barry stating, "Have them make final offer sign and get check then we can respond. If it is a LOI what [good] is it if it isn't signed. Let[']s get an offer to review. It's been weeks." Shortly thereafter, Barry sent Cefalo a text message that read, in relevant part, "[Two Electronics] wants you [St. John's] to sign first, with a check, and then he will sign. Normally, the seller signs last or second. ... Can Rick [McDonald] sign today and get it to me today?" Later that day, McDonald, on behalf of St. John's, executed four copies of the final LOI and gave them, along with a check, to Cefalo so that he could deliver them to Barry for signature by Piccione. Also that day, Piccione accepted an offer from a third party to purchase the property.[4] On February 5, 2016, Piccione contacted McDonald and told him that he would not enter into a purchase and sale agreement with St. John's because he had agreed to sell the property to a third party.
Discussion. "On appeal, we are bound by the trial judge's findings of fact, including all reasonable inferences, that are supported by the evidence." Almeida v. Arruda, 89 Mass. App. Ct. 241, 244 (2016). We review his legal conclusions de novo. Ibid.
The sole legal issue in this case is whether Barry acted with the actual or apparent authority of Two Electronics with respect to the proposed purchase and sale of the property. St. John's claims that where Piccione told McDonald to "work through Barry," and where Barry served as Piccione's mouthpiece for the transaction, Barry's February 3, 2016, text message to Cefalo confirming that Piccione "will sign" the final LOI constituted a binding commitment to sell the property to St. John's. We disagree.
"[T]he question of agency is usually an issue for the fact finder." Fergus v. Ross, 477 Mass. 563, 566 (2017), quoting from Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000). A principal is liable for its agent's conduct when the agent acts with "the actual or apparent authority of the principal in that transaction." Theos & Sons, Inc., supra at 743.
We are not persuaded by St. John's claim that Barry acted with actual authority. "Actual authority can be express or implied. Actual authority results when the principal explicitly manifests consent, either through words or conduct, that the agent should act on behalf of the principal. Implied authority is actual authority that evolves by implication from the conduct of the parties." Id. at 743 n.13 (citations omitted). In determining the existence or absence of actual authority, we look to the principal's actions towards the agent, through words or conduct, and the agent's reasonable understanding of the principal's manifestations. See Restatement (Third) of Agency § 2.01 comment c (2006).
In the present case, there was no actual authority. The judge found that Piccione "never explicitly gave Barry permission to accept, reject, or even negotiate offers from [St. John's] on behalf of Two Electronics." The judge further determined that Barry understood "he was not authorized to make decisions regarding the lease or sale of the [p]roperty," and that he did not understand Piccione's phrase "work through Barry" to provide such authorization. Rather, the judge credited Piccione's testimony to the contrary. The judge ultimately concluded that apart from the "vague and inadequate phrase 'work through Barry,' [St. John's] failed to identify any specific words or conduct by which Piccione's consent to have Barry accept an offer was either expressly manifested or implied." Where "no actual authority was ever given to Barry, the nature of the relationship between Barry and Piccione, as that of a typical real estate broker and their client, remained unchanged." See generally Harrigan v. Dodge, 216 Mass. 461, 463-464 (1914). The judge's findings and rulings have abundant support in the trial record, and we discern no error.[5]
St. John's fares no better on its claim that Barry acted with apparent authority. Apparent authority is created by "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Weisman v. Saetz, 11 Mass. App. Ct. 440, 442 (1981) (quotation omitted). "Only the words and conduct of the principal ... and not those of the agent, are considered in determining the existence of apparent authority." Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 801 (2014). St. John's argues that the judge relied on "outdated" authority in making his apparent authority determination. Specifically, it argues that pursuant to the "trend" of agency law, Barry's relationship with Two Electronics "transcended the real estate agent relationship." For these points St. John's relies on Fergus v. Ross, 89 Mass. App. Ct. 528, 533-534 (2016). However, after the briefing in this appeal, the Supreme Judicial Court reaffirmed its view of traditional agency principles, see Fergus v. Ross, 477 Mass. at 566-568. We rely on those principles, and, based on the judge's findings, which are supported by the record, we disagree with St. John's that apparent authority was established.
In the present case, there were multiple meetings at which McDonald and Piccione conducted face-to-face negotiations. Indeed, McDonald requested these in-person meetings in order to meet with Piccione, and discuss terms. Moreover, as the judge found, Cefalo stated in an e-mail to McDonald that Barry cannot speak for Piccione. Cefalo further conveyed his frustration, via e-mail to McDonald's partner, that Barry and Piccione were not on the same page and that Piccione kept "moving the goal post." McDonald ultimately received that communication, too.[6] Therefore, as the judge found, McDonald knew that Piccione was the ultimate decision maker. Here again, we discern no error in the judge's conclusion that Piccione's actions and conduct, including his direction to "work through Barry," could not have reasonably led St. John's to believe that Barry had authority to bind Two Electronics to sell the property. See Weisman, supra.[7]
Judgment affirmed.

St. John's contemporaneously filed a motion for approval of a memorandum of lis pendens relating to the property, which the judge allowed. Two Electronics filed a special motion to dismiss the memorandum of lis pendens, which the judge denied. The judge also allowed St. John's subsequent motion for a preliminary injunction, which restrained Two Electronics from conveying or encumbering the property.

The judge found that "[t]here was no written listing agreement under which Barry was authorized to market the [p]roperty for sale."

Unbeknownst to McDonald, Cefalo, and Barry, on February 2, 2016, Two Electronics had received a signed offer from a third party to purchase the property.

As noted earlier, before Barry sent to Cefalo the February 3, 2016, text message upon which St. John's relies to sustain its argument, Piccione had told Barry, "Have them make final offer sign and get check then we can respond. If it is a LOI what [good] is it if it isn't signed. Let[']s get an offer to review." The judge thus found, and the record demonstrates, that Piccione did not wish to be bound, but sought instead to see the terms of an offer that he could consider. In light of the judge's comprehensive findings, Barry could not reasonably have believed anything to the contrary.

Cefalo also testified that "he knew that Piccione was the decision maker 'on every issue related to the terms of this deal,' " and that "he understood that Barry could not speak for Piccione since Barry was just a real estate broker in the transaction." Similarly, "McDonald attested that he always understood Piccione to be the decision maker about whether and under what terms Two Electronics would sell the [p]roperty."

In its cross appeal, Two Electronics contends that the judge erred in determining that the text message from Barry satisfied the Statute of Frauds, and thus improperly denied the special motion to dismiss St. John's verified complaint. Because we conclude that Barry was without authority to bind Piccione, we do not address this issue. See Higgins v. Delta Elevator Serv.Corp., 45 Mass. App. Ct. 643, 649 (1998). However, we pause to note the lack of merit in St. John's separate contention that Two Electronics waived its right to appeal the denial of the special motion to dismiss by failing to prosecute an interlocutory appeal of the judge's ruling. General Laws c. 184, § 15(d ), authorizes, but does not require, a party to file an interlocutory appeal from the denial of a special motion to dismiss. See G. L. c. 184, § 15(d ), as appearing in St. 2002, c. 496, § 2 ("Any party aggrieved by a ruling under subsection [c ] or by the denial of an ex parte motion for a memorandum of lis pendens, may appeal pursuant to the first or second paragraphs of section 118 of chapter 231"). We follow the plain and unambiguous language of the statute. St. John's cites no authority to the contrary.